2 P.3d 738

Johnny Michael URRUTIA and Lynn Marie Urrutia; Lawrence John Urrutia and Patricia G. Urrutia; Sonja Allece Humphries and Martin J. Humphries; Constance Rae Stauts and Frank Lynn Stauts; Louisa Marie Harris and Samuel Robert Harris; Valentia Jo Allen and Jeff Allen; The Urrutia Family Limited Partnership; and Virginia Reed, Petitioners–Respondents–Cross Appellants,

v.

BLAINE COUNTY, Idaho, By and Through its duly elected BOARD OF COMMISSIONERS, Respondent–Appellant–Cross Respondent.

No. 24586.

Supreme Court of Idaho, Twin Falls, November 1999 Term.

April 3, 2000.

Rehearing Denied June 9, 2000.

Blaine County Prosecuting Attorney, Hailey, for appellant. Douglas A. Werth argued.

Rosholt, Robertson & Tucker, Twin Falls, for respondent Urrutia. Gary D. Slette argued.

Hepworth, Lezamiz & Hohnhorst, Twin Falls, for respondent Reed. John C. Hohnhorst argued.

TROUT, Chief Justice.

This is a land use case involving the district judge's reversal of the Blaine County Board of Commissioners'(Board) decision to deny two subdivision applications submitted by respondents Johnny Michael Urrutia, et al. (Urrutias) and Virginia Reed (Reed). The Urrutias and Reed have cross-appealed

from the district judge's refusal to award attorney fees under I.C. § 12–117. We hold that the Board's decision to deny the Urrutias and Reed subdivision applications was improper in that the Board placed inappropriate emphasis upon the subdivision's non-compliance with the Comprehensive Plan. While we agree with the district judge that the Board's decision should not stand, we vacate that decision so that these applications may be remanded to the Board for further consideration applying the proper standards.

## I.

## BACKGROUND

The Urrutias submitted a subdivision application to Blaine County on September 22, 1994. The property is located in an area zoned A–20 which permits single-family residences and the division of land into lots of twenty acres or larger in a subdivision. The Planning and Zoning Commission (Commission) recommended approval of the Urrutias subdivision. The Board considered the Commission's recommendation at a hearing on February 6, 1995 and again on February 13, 1995. The Board granted preliminary plat approval for the Urrutias subdivision on February 21, 1995. The Board issued final plat approval of the Urrutias subdivision on July 17, 1995 and stated that although the application did not entirely conform to the comprehensive plan, it did comply with the zoning ordinance and subdivision ordinance.

Respondent and Cross–Appellant Reed owns and resides on a 119 acre parcel located in an area within Blaine County, zoned A–20. On March 8, 1995, Reed submitted an application to the Commission for approval of a plat to subdivide her property into four single-family residential lots ranging from twenty to forty-two acres. Reed's application was approved and submitted to the Board for review. The Board determined that the application conformed with the comprehensive plan, zoning ordinance and subdivision ordinance and approved Reed's application on July 17, 1995.

Dean R. Rogers (Rogers), an adjoining landowner, filed an action for judicial review of the Board's decisions approving the Urrutias and Reed subdivision applications. The Urrutias and Reed intervened and were represented by counsel. On October 24, 1996, the district judge remanded the decision to the Board with respect to the Urrutias subdivision in order to give Rogers "an opportunity to express his concerns and to create a record thereof," and, with respect to both the Urrutias and Reed subdivisions, for the Board to enter findings of fact and conclusions of law consistent with *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984). The Board discussed both applications at a January 6, 1997 meeting and determined that neither application conformed to the 1994 comprehensive plan. The Board subsequently issued written findings of fact and conclusions of law denying the Urrutias and Reed subdivision applications.

The Urrutias and Reed filed a Joint Petition For Judicial Review in the District Court for the Fifth District on January 6, 1997. On September 11, 1997, the Urrutias and Reed filed a motion requesting the district court take judicial notice of (1) a list compiled by the Blaine County assessor listing the single-family subdivisions approved by the Board in the county's A–20 zone between 1974 and 1996; and (2) the Board's September 4, 1997 action approving Phase II of the Prairie Sun Ranch Subdivision located in the A–20 zone. The district judge granted the motion to take judicial notice and issued its memorandum decision on February 2, 1998. In that decision, the district judge found that (1) the Board had misunderstood and failed to properly apply the district judge's decision in *Rogers v. Blaine County* ; (2) the Board's decision to reject the applications based upon non-conformity with the comprehensive plan was contrary to *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984); and (3) the Board's justification for denying the applications was invalid, and the record established, as a matter of law, that the applications were in full compliance with the zoning and subdivision ordinances. The district judge reversed the Board's decision and ordered the Board to grant the applications. The district judge awarded costs, but not attorney fees to the Urrutias

and Reed. Blaine County filed its Notice of Appeal on March 16, 1998 and on April 7, 1998, the Urrutias and Reed filed their Notice of Cross–Appeal.

## II.

### STANDARD OF REVIEW

■ The Idaho Administrative Procedures Act (IDAPA) governs the review of local administrative decisions. *Comer v. County of Twin Falls*, 130 Idaho 433, 437, 942 P.2d 557, 561 (1997). In an appeal from the decision of a district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Id.*; *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996). The Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). The Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998) (citing *South Fork Coalition v. Board of Comm'rs of Bonneville County*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990)). In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *Id.* Here, the Board is treated as an administrative agency for purposes of judicial review. *See South Fork*, 117 Idaho at 860, 792 P.2d at 885. The Court may overturn the Board's decision where the Board's findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). The party attacking the Board's decision must first illustrate that the Board erred in a manner specified in I.C. § 67–5279(3), and then that a substantial right has been prejudiced. *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 587 (1998). If the Board's action is not affirmed, "it shall be set aside ... and remanded for further proceedings as necessary." I.C. § 67–5279(3).

## III.

### THE BOARD ERRED IN DENYING THE SUBDIVISION APPLICATIONS BASED ON NON–COMPLIANCE WITH THE COMPREHENSIVE PLAN

The Board initially approved both the Urrutias and Reed subdivision applications, finding that the Urrutias' proposal did not entirely conform to the comprehensive plan, while Reed's did comply. The Board further found that both applications conformed to Blaine County's zoning ordinance and subdivision ordinance. On remand from the district judge, the Board denied both subdivision applications based essentially on the Board's conclusion that neither subdivision complied with the comprehensive plan. The district judge determined that the Board erred in its reliance on the comprehensive plan alone as a basis for denying the applications and with that portion of the district judge's decision, we agree. Because, under IDAPA, the district court or this Court are limited in the actions which may be taken in reviewing an agency decision, this case must be remanded back to the Board for consideration of these subdivision applications applying the proper standards.

■ A brief review of the purpose of a comprehensive plan within the framework of the Local Land Use Planning Act will help explain this Court's view of the appropriate standards to be applied by the Board on remand. The Local Land Use Planning Act was promulgated to ensure the orderly and effective development of land to the benefit of Idaho citizens. *See* I.C. § 67–6502. The Act indicates that a comprehensive plan and a zoning ordinance are distinct concepts serving different purposes. A comprehensive plan reflects the "desirable goals and objectives, or desirable future situations" for the land within a jurisdiction. I.C. § 67–6508. This Court has held that a comprehensive plan does not operate as legally controlling zoning law, but rather serves to guide and

advise the governmental agencies responsible for making zoning decisions. *South Fork Coalition v. Board of County Comm'rs of Bonneville County*, 117 Idaho 857, 863, 792 P.2d 882, 888 (1990) (quoting *Bone v. City of Lewiston*, 107 Idaho 844, 850, 693 P.2d 1046, 1052 (1984)); *cf. Sprenger, Grubb & Assocs., Inc., v. City of Hailey*, 127 Idaho 576, 585, 903 P.2d 741, 750 (1995); *Balser v. Kootenai County Board of Comm'rs*, 110 Idaho 37, 39, 714 P.2d 6, 8 (1986); *Ferguson v. Board of County Comm'rs for Ada County*, 110 Idaho 785, 787, 718 P.2d 1223, 1225 (1986). The Board may, therefore, refer to the comprehensive plan as a general guide in instances involving zoning decisions such as revising or adopting a zoning ordinance. A zoning ordinance, by contrast, reflects the permitted uses allowed for various parcels within the jurisdiction. *See* I.C. § 67–6511. Given this distinction, we turn to an examination of the controlling law in this case: the zoning ordinance and subdivision ordinance.

According to the zoning ordinance, the purpose of the A–20 district is "to preserve those lands either presently in agricultural use, or having potential for agricultural use." The ordinance further provides that the minimum lot area in a subdivision in this district is to be twenty acres and uses of the land for agricultural purposes or single-family residences are among those permitted. Both the Urrutias and Reed subdivision applications satisfy these requirements.

The subdivision ordinance provides three requirements with respect to these subdivision applications. It is only the first of those three requirements, however, which has created the difficulties presented on appeal. That provision states that "land being subdivided shall conform to the Comprehensive Plan, the zoning ordinance, this subdivision ordinance, and other ordinances in effect in the County." In its first consideration of the Urrutias and Reed subdivision applications, the Board utilized the comprehensive plan as a "guideline", subordinate to the zoning and subdivision ordinances. After reviewing the findings and conclusions, the district judge remanded the case back to the Board with the following instructions:

Rogers argues that section 9.01(1) of the Blaine County Comprehensive Plan requires strict conformation with the Comprehensive Plan. The language "shall conform to the comprehensive plan" shall be given the same interpretation as Idaho Code 67–6508 in the *Bone v. Lewiston* case. The County Commissioners are to apply the same standards and use the same process of analyzing the issues under both Idaho Code 67–6508 and Blaine County Comprehensive Plan Section 901(1)(sic).

The Board then issued its second decision relying almost exclusively on the comprehensive plan to deny the applications, finding that "preservation of the agricultural community is a 'primary objective' of the plan" and that approval of the applications "would adversely impact the agricultural character of the surrounding area." On review, the district judge then found that the Board had erred by relying solely on the comprehensive plan, applying it as if it were a zoning ordinance.

 The question presented is what is meant by the phrase in the subdivision ordinance requiring the Board to determine that the land to be subdivided "shall conform to the Comprehensive Plan." This requirement requires only that the land to be subdivided generally comports with the overall goals of the comprehensive plan. Blaine County's comprehensive plan not only discusses the importance of agriculture to the area, but also sets forth guidelines regarding economic development, housing, land use, public services, facilities and utilities and recreation, among others. In determining whether the land "conforms to the comprehensive plan" for the purposes of a subdivision application, the Board is simply required to look at all facets of the comprehensive plan and assure that the land fits within all of the various considerations set forth in the plan. It is to be expected that the land to be subdivided may not agree with all provisions in the comprehensive plan, but a more specific analysis, resulting in denial of a subdivision application based solely on non-compliance with the comprehensive plan elevates the plan to the level of legally controlling zoning law. Such a result affords the Board unbounded

discretion in examining a subdivision application and allows the Board to effectively rezone land based on the general language in the comprehensive plan. As indicated above, the comprehensive plan is intended merely as a guideline whose primary use is in guiding zoning decisions. Those zoning decisions have already been made in this instance, and land subdivided into twenty-acre lots and used for single family residences is specifically permitted in this agricultural area. Thus, we agree with the district judge that the Board erred in relying completely on the comprehensive plan in denying these applications, and should instead have crafted its findings of fact and conclusions of law to demonstrate that the goals of the comprehensive plan were considered, but were simply used in conjunction with the zoning ordinances, the subdivision ordinance and any other applicable ordinances in evaluating the proposed developments. Because the Board acted in violation of the statutory provisions, we remand this issue for further consideration. I.C. § 67–5279(3).

## IV.

### ADDITIONAL ISSUES PRESENTED ON APPEAL

The County has raised a number of other issues on appeal. "Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Price*, 131 Idaho at 431, 958 P.2d at 588 (quoting *Cummings v. Cummings*, 115 Idaho 186, 190, 765 P.2d 697, 701 (Ct.App.1988)). We will therefore address the remainder of the arguments presented by the County on appeal for the purpose of providing guidance on remand.

### A. The Board retroactively applied the 1994 comprehensive plan to the Urrutias' subdivision application.

The Urrutias filed their subdivision application on September 22, 1994. The Board granted preliminary plat approval on February 21, 1995, stating that the subdivision proposal conformed to the zoning ordinance and subdivision ordinance but "does not conform entirely to the Comprehensive Plan in that subdivisions are encouraged nearest population centers." It is unclear whether the Board was referring to the 1975 comprehensive plan or the 1994 comprehensive plan. It is clear, however, that when the Board denied the Urrutias subdivision application on remand from the district court, it did so based on non-compliance with the 1994 comprehensive plan.

■ The 1994 comprehensive plan was adopted on November 7, 1994. The Board argues that the agricultural section of the 1994 comprehensive plan was adopted on October 18, 1993, and was thus in effect when the Urrutias filed their subdivision application. Although the first page of the agricultural section states "adopted by Blaine County Board 10/18/93," this language should more appropriately state: "approved by Blaine County Board 10/18/93." The recital page of the 1994 comprehensive plan states that since 1990, the various sections of the 1994 Comprehensive Plan had been approved by the Board and were finally adopted on November 7, 1994. Idaho Code § 67–6509(c) further provides that "[n]o (comprehensive) plan shall be effective unless adopted by resolution by the governing board." The agricultural section was therefore approved on October 18, 1993, but not adopted with the comprehensive plan until November 7, 1994. The Board also cited portions of the land use section of the 1994 comprehensive plan which was not adopted until November 7, 1994 and was revised on June 5, 1995. The Board thus retroactively applied the agricultural and land use sections of the 1994 comprehensive plan to the Urrutias subdivision application.

■ Idaho law is well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application. *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley Co.*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999). The Board should have evaluated the Urrutias subdivision application under the 1975 comprehensive plan. Thus on remand, the Board should consider the Urrutias applica-

tion by examining the 1975 version of the comprehensive plan, not the 1994 version.

## B. The Urrutias and Reed are not precluded from challenging the district judge's earlier decision or from raising new arguments.

The Board advances several remedial doctrines, quasi-estoppel, law of the case, res judicata and collateral estoppel, in an attempt to preclude the Urrutias and Reed from challenging the district judge's decision in *Rogers v. Blaine County,* the earlier judicial review proceeding, and from raising new arguments in the present action. None of the remedial doctrines apply here because the district judge's decision in *Rogers* simply remanded the case back to the Board for further factual findings. There has been no reliance or detriment established by the Board, nor was there a final decision which would bar further action.

 The Board contends that the doctrine of quasi-estoppel bars the Urrutias from arguing before the district court that the 1994 comprehensive plan does not apply to the Urrutias subdivision application because the Urrutias maintained a contrary position in *Rogers.* Quasi-estoppel applies when a party asserts a claim or position inconsistent with a position previously taken to the detriment of the party seeking application of the doctrine. *Sun Valley Hot Springs Ranch, Inc. v. Kelsey,* 131 Idaho 657, 662, 962 P.2d 1041, 1046 (1998); *KTVB, Inc. v. Boise City,* 94 Idaho 279, 281–82, 486 P.2d 992, 994–95 (1971). The inconsistent position must have procured some advantage to the challenged party or produced some disadvantage to the challenging party. *KTVB,* 94 Idaho at 281–82, 486 P.2d at 994–95. Here, the Board has failed to establish the detriment it would incur by applying the 1975 comprehensive plan and, thus, has failed to prove a critical element of quasi-estoppel.

 The Board next argues that the Urrutias and Reed should be barred from challenging the district judge's decision in *Rogers* under the doctrine of law of the case. The doctrine of law of the case provides that where an appellate court states a principle of law in deciding a case, that rule becomes the

law of the case and is controlling in the lower court and on subsequent appeals. *State v. Creech,* 132 Idaho 1, 9 & n. 1, 966 P.2d 1, 9 & n. 1 (1998). The doctrine does not apply in the present case because the district judge did not announce some principle of controlling law; rather, he sent the case back for further factual findings.

 The Board also contends that the Urrutias and Reed are barred from challenging the *Rogers* decision under the doctrines of res judicata and collateral estoppel. Because we believe the district judge's decision in *Rogers* simply remanded the case for further findings, it was not a final and binding adjudication of the issues presented. Thus neither doctrine applies.

## C. The district court committed harmless error by permitting the Urrutias and Reed to supplement the evidence before the Board.

The Urrutias and Reed filed a motion requesting the district judge to take judicial notice of the Board's approval of over thirty single-family residential subdivisions in the A–20 zone during the period from 1974 to 1996. The district judge was also asked to take judicial notice of the Board's approval of the Prairie Sun Ranch Subdivision, located in the A–20 zone, on September 4, 1997. The district judge granted the motion. The Board argues that the district judge erred because the evidence was outside the record before the Board and the district judge should have remanded the matter to the Board for further fact finding.

Judicial review of factual issues under IDAPA is governed by I.C. § 67–5277. Section 67–5277 states that "judicial review of disputed issues of fact must be confined to the agency record for judicial review as defined in this chapter, supplemented by additional evidence taken pursuant to section 67–5276, Idaho Code." I.C. § 67–5276 provides that the district court "may remand the matter to the agency with directions that the agency receive additional evidence and conduct additional fact finding," when it is established that "there were good reasons for failure to present it in the proceeding before

the agency." That statute further provides that the district court may receive additional evidence upon proof of any "alleged irregularities in procedure before the agency." Here, neither exception in I.C. § 67–5276 is applicable. The Urrutias and Reed did not establish good reasons for the failure to present evidence of the Board's prior approval of single-family residential subdivisions in the A–20 zone. The Urrutias and Reed also did not point to any procedural irregularity before the Board which would authorize the district judge to receive evidence beyond the agency record. The district judge thus should not have permitted additional evidence or, assuming the Urrutias and Reed had established good reasons for the evidentiary failure before the agency, the district judge should have remanded the matter to the Board for additional fact finding. We note that our decision in *Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 655 P.2d 926 (1982) is distinguishable from this case. In *Workman*, the City argued that the district court erred in considering additional evidence which was not presented to the City Council. *Workman* is distinguishable in that the additional evidence was stipulated into evidence by the City itself and the City failed to object to consideration of the evidence by the district court.

■ The district judge's error here, however, was harmless. The burden is upon the Board to establish a prejudicial error and error is prejudicial only if it could have affected or did affect the outcome of a proceeding. *See Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991). Here, the Board has not shown that its rights were prejudiced as a result of the district judge's decision to include the additional information. The district judge, in his Opinion Re: Petition for Judicial Review, did not mention the Board's prior approval of single-family residential subdivisions in the A–20 zone or the Prairie Sun Ranch Subdivision in the A–20 zone. Instead, the district judge focused on the Board's misapplication of the comprehensive plan and misinterpretation of *Bone*. The additional evidence thus appears to have played no role in the district judge's decision and its admission constituted, at most, harmless error.

**D. The district judge did not err in denying the Urrutias and Reed attorney fees because the Board acted with a reasonable basis in fact or law.**

■ The district judge denied attorney fees to the Urrutias and Reed on review under I.C. § 12–117, stating that "[a]ttorney's fees under I.C. § 12–117 are denied ... on the basis that the Court believes that the Respondent, Blaine County, felt that a justiciable controversy existed in this matter, and that litigation should not be discouraged." This Court's standard of review of district court decisions applying I.C. § 12–117 is one of free review. *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 558, 976 P.2d 477, 484 (1999).

■ Idaho Code § 12–117(1) requires an award of attorney fees in any administrative or civil proceeding involving an agency where the private party seeking fees prevails and the agency acted without a reasonable basis in fact or law. Although the Board erred in retroactively applying the 1994 comprehensive plan to the Urrutias subdivision application, the Board did not act without a reasonable basis in fact or law. The Board acted in a way that fairly and reasonably addressed the district judge's instructions on remand. We accordingly hold that the district judge did not err in denying Urrutias' and Reed's request for attorney fees under I.C. § 12–117.

## VI.

## CONCLUSION

The district judge's decision ordering approval of the Urrutias and Reed subdivision applications, is hereby vacated and remanded to the Board for further proceedings. We do not award costs or attorney fees to either party.

Justices SILAK, WALTERS, KIDWELL and Justice Pro Tem SMITH, concur.